## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br><br>**BOSTON BOATWORKS, L.L.C.,**<br><br>Debtor. | **Chapter 11**<br><br>**Case No. 25-10071-CJP** |

## NOTICE OF PRIVATE SALE OF SUBSTANTIALLY ALL OF DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, DEADLINE FOR SUBMITTING OBJECTIONS AND COUNTEROFFERS, AND HEARING DATE

Notice is hereby given, under Sections 105, 363(b) and (f), and 365 of 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 6004(c) and 6006(a), pursuant to the motion by Boston Boatworks, L.L.C., the debtor and debtor-in-possession in this matter (the "Debtor") to sell substantially all of its Acquired Assets (the "Sale Motion") that the Debtor intends to sell all or substantially all of its Acquired Assets (the "Acquired Assets") by private sale to Boston Marine Services, LLC ("BMS"), pursuant to a certain asset purchase agreement (the "APA").[1]  Among the Acquired Assets, and pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, the Debtor also intends to assume and assign certain executory contracts.

### I.      The Sale

The Purchase Price.  In exchange for the Acquired Assets, BMS shall pay to the Debtor $500,000, to be paid in immediately available funds at the closing of the sale.

Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor proposes to sell the Acquired Assets to BMS free and clear of all liens (including, but not limited to, any 'lien' as defined in Section 101(37) of the Bankruptcy Code), claims (including, but not limited to, any 'claim' as defined in Section 101(5) of the Bankruptcy Code), security interests, mortgages, encumbrances, interests and restrictions of every kind.  Any such perfected, enforceable, and valid claims, liens, encumbrances or interests shall attach to the proceeds of the sale in accordance with the priorities established under applicable law.  Nothing contained in this notice shall constitute a waiver by the estate of the right to challenge the extent, priority or validity of any asserted lien, claim, encumbrance, or interest on, in, or to the Acquired Assets.

The Debtor has requested that the Bankruptcy Court determine at the Sale Hearing (as defined below), that the Debtor has the right to sell the Acquired Assets and that BMS be deemed a "good faith" purchaser providing to the Debtor and the Debtor's estate consideration for the Acquired Assets that constitutes payment of "value" pursuant to Section 363(m) of the Bankruptcy Code.

---

[1]      A copy of the APA is attached to this notice as Exhibit A.  Capitalized terms not otherwise defined in this notice shall have the meanings ascribed to them in the APA.

839511

## II.     Deadlines and Sale Hearing Date

Counteroffers or objections to the proposed sale must be filed with the Clerk of the United States Bankruptcy Court, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, MA 02109, on or before **4:30 p.m. on February 14, 2025,** (the "Response Deadline").  A copy of any counteroffer or objection must be served upon the following parties so as to be actually received by the Response Deadline: counsel for the Debtor, D. Ethan Jeffery, Murphy & King, Professional Corporation, 28 State Street, Boston, Massachusetts 02109 (ejeffery@murphyking.com); counsel for BMS, Amy A. Zuccarello, Sullivan & Worcester, LLP, One Post Office Square, Boston, MA 02019 (azuccarello@sullivanlaw.com); and counsel for the United States Trustee, John W. McCormack Post Office and Court House, 5 Post Office Square, Boston, MA 02109.

Any objection must state with particularity the grounds for the objection and why the sale of the Acquired Assets should not be authorized.  Any objection to the Sale Motion shall be governed by Federal Rule of Bankruptcy Procedure 9014.  Absent a timely objection, the Bankruptcy Court may enter an Order binding upon all parties approving the sale of the Acquired Assets.

**A HEARING** on the Sale Motion (the "Sale Hearing"), including any objections thereto, is scheduled to occur on **February 25, 2025, at 2:00 p.m.**, by a HYBRID hearing at the United States Bankruptcy Court, Donohue Federal Building, 595 Main Street, Room 311, Worcester, MA 01608, with an option for parties in interest to appear by video (except that a representative of BMS and any competing bidder must appear in person at the Sale Hearing).  Any party who has filed a timely objection must be present at the Sale Hearing, failing which the objection may be overruled.  To obtain video access information, parties in interest shall email the Courtroom Deputy at CJP_COURTROOM_DEPUTY@mab.uscourts.gov no later than February 24, 2025 at 12:00 Noon, providing the contact information for the party seeking to appear by video.

Any questions concerning the Sale Motion or this Notice should be addressed to the undersigned counsel to the Debtor.  The Sale Motion is on file at the Clerk's Office of the United States Bankruptcy Court.  Copies may also be obtained, upon request, from the undersigned counsel to the Debtor.

BOSTON BOATWORKS, L.L.C.,
By its counsel,

*/s/ D. Ethan Jeffery*
D. Ethan Jeffery (BBO #631941)
Conner B. Verreaux (BBO #771723)
Murphy & King, Professional Corporation
28 State Street Boston, Suite 3101
Boston, MA 02109
Telephone:  (617) 423-0400
Fax:  (617) 423-0498
Email:  ejeffery@murphyking.com
Email:  cverreaux@murphyking.com

839511

# Exhibit A

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of January14, 2025, is by and between Boston Boatworks, L.L.C., a Massachusetts limited liability company, with an address of 333 Terminal Street, Charlestown, Massachusetts 02129 ("**Seller**"), and Boston Marine Services LLC, a Massachusetts limited liability company, with an address of 1 Pier 8, 13th Street, Charlestown, Massachusetts 02129, or its nominee ("**Buyer**").  Buyer and Seller are collectively referred to herein as the "**Parties**."  Capitalized terms used herein and not otherwise defined have the respective meanings set forth in Article I.

## WITNESSETH

WHEREAS, on January 14, 2025 (the "**Petition Date**"), Seller commenced a voluntary case under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Massachusetts (the "**Bankruptcy Court**"), which proceeding is being administered as Case No. 25-10071 (the "**Bankruptcy Case**");

WHEREAS, Seller remains in possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its Business as a debtor-in-possession;

WHEREAS, Seller desires to sell and assign to Buyer, and Buyer desires to purchase from Seller, the Purchased Assets, and assume the Assumed Liabilities, free and clear of all Encumbrances, in the manner and subject to the terms and conditions set forth in this Agreement and to the maximum extent permitted by the Bankruptcy Code;

WHEREAS, the Purchased Assets will be sold in a sale authorized by the Bankruptcy Court pursuant to, *inter alia*, sections 105, 363 and 365 of the Bankruptcy Code, in accordance with the other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure and the local rules for the Bankruptcy Court, all on the terms and subject to the conditions set forth in this Agreement and subject to the entry and terms of the order approving and authorizing such sale;

WHEREAS, the Parties acknowledge and agree that the purchase by Buyer of the Purchased Assets, and the assumption by Buyer of the Assumed Liabilities, are being made at arms' length, in good faith and without intent to hinder, delay, or defraud creditors of Seller; and

WHEREAS, the execution and delivery of this Agreement and the Parties' ability to consummate the transactions set forth in this Agreement are subject to, among other things, entry of the Sale Order under, *inter alia*, sections 105, 363 and 365 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing and the mutual representations, warranties, covenants, and agreements contained herein and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I

1

## DEFINITIONS

1.1 **Defined Terms**.    In addition to terms that are used and otherwise defined in this Agreement, the terms below shall have the following meanings:

"**Agreement**" shall have the meaning provided in the introductory paragraph hereto.

"**Assumed Contract**" shall mean any contract, agreement, lease and/or license that (i) is listed on Schedule 2.1(b) of this Agreement, as same may be amended from time to time prior to the Closing; (ii) is subject to the approval of the Bankruptcy Court of the assignment and assumption free and clear of Encumbrances; and (iii) is actually assumed by Seller and assigned to Buyer.

"**Assumed Liabilities**" shall have the meaning provided in Section 2.3 hereto.

"**Auction**" shall mean the auction that may be scheduled to take place in conjunction with the process of obtaining the entry of the Sale Order.

"**Bankruptcy Case**" shall have the meaning in the first recital hereto.

"**Bankruptcy Code**" shall have the meaning in the first recital hereto.

"**Bankruptcy Court**" shall have the meaning in the first recital hereto.

"**Business**" shall have the meaning set forth in Section 2.1 hereto.

"**Business Day**" shall mean any day excluding Saturday, Sunday and any day that is a legal holiday within the meaning of Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

"**Buyer**" shall have the meaning provided in the introductory paragraph hereto.

"**Closing**" shall have the meaning provided in Section 3.1 hereto.

"**Closing Date**" shall have the meaning provided in Section 3.1 hereto.

"**Closing Deadline**" shall have the meaning provided in Section 10.1(a)(2) hereto.

"**Deposit**" shall have the meaning provided in Section 2.5 hereto.

"**DIP Loan**" shall mean the Seller's debtor-in-possession loan in the aggregate principal amount of $100,000.00, which shall have administrative priority over Seller's general unsecured creditors, entered into in connection with the Bankruptcy Case, as the same may be amended, restated, or supplemented from time to time.

"**DIP Lender**" shall mean Buyer, as lender under the DIP Term Sheet.

4920-3580-3405, v.4/839319

"**DIP Motion**" shall mean the motion to be filed by Seller in the Bankruptcy Case seeking, among other things, interim and final approval of the DIP Loan.

"**DIP Order**" shall mean, collectively, the interim and final orders to be entered by the Bankruptcy Court approving, among other things, the DIP Loan.

"**DIP Term Sheet**" shall mean that certain Term Sheet agreed upon by and among Seller and Buyer evidencing the DIP Loan to be provided by the DIP Lender to Seller, as the same may be amended, modified, or supplemented from time to time, together with any other documents and instruments executed in connection therewith and related thereto.

"**Encumbrance**" shall mean any interest, pledge, lien, mortgage, security interest, judgment, demand, restriction, charge of any kind or nature, claim (as and to the full extent that term is defined in section 101(5) of the Bankruptcy Code), obligation, option, right, or restriction whether imposed by agreement, understanding, law, equity or otherwise (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated) in or with respect to any assets of Seller or against Seller.

"**Environmental Law**" shall mean any federal, state local or foreign law, statute, code, ordinance, rule or regulation relating to the protection of the environment or natural resources.

"**Escrow Agent**" shall have the meaning provided in Section 2.5 hereto.

"**Excluded Assets**" shall have the meaning provided in Section 2.2 hereto.

"**Excluded Production Contracts**" shall mean (i) the BB 44 Yacht Construction Agreement dated June 1,  2023 among Edward M. Kaye, Zurn Yacht Design and Seller, (ii) the Yacht Construction Agreement dated _____ 21, 2023 between Doug Douglass and Seller, (iii) the BB44 Resale Production Order dated  February 28, 2024 from Diaz Marine Services for Marc Peperzak, (iv) the Yacht Construction Agreement dated September 13, 2024 between Barton & Gray Yacht Works LLC and Seller relating to Day Chaser Hull #20, and (v) the Yacht Construction Agreement dated September 13, 2024 between Barton & Gray Yacht Works LLC and Seller relating to Day Chaser Hull #21.

"**Final Order**" shall mean an Order of the Bankruptcy Court that is in full force and effect, that has not been modified, amended, reversed, vacated or stayed, and as to which the time to file an appeal, a motion for rehearing, or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

"**Knowledge of Seller**" shall mean the actual knowledge of Scott R. S. Smith.

"**Ordinary Course of Business**" shall mean, with respect to any Person, actions that (i) are taken in the ordinary and usual course of normal day to day operations of the Business consistent with past practice in effect prior to the filing of the Bankruptcy Case, and (ii) taken in accordance with all applicable laws.

3

"**Parties**" shall have the meaning provided in the introductory paragraph hereto.

"**Person**" shall mean any individual, corporation, partnership, limited liability company, limited partnership, trust, association, joint venture or other entity of any kind whatsoever.

"**Petition Date**" shall have the meaning provided in the first recital hereto.

"**Purchase Price**" shall have the meaning provided in Section 2.5 hereto.

"**Purchased Assets**" shall have the meaning provided in Section 2.1 hereto.

"**Sale Hearing**" shall mean the hearing conducted by the Bankruptcy Court to approve the Sale Motion and the Transactions.

"**Sale Motion**" shall mean the motion in form and substance satisfactory to Buyer, on the one hand, and Seller, on the other, each in its reasonable discretion, to be filed by Seller with the Bankruptcy Court seeking a Final Order authorizing and approving the Transactions.

"**Sale Order**" shall mean the Final Order approving this Agreement and the terms and conditions hereof, including pursuant to section 363 and 365 of the Bankruptcy Code and authorizing Seller to consummate the Transactions.

"**Seller**" shall have the meaning provided in the introductory paragraph hereto.

"**Tax**" or "**Taxes**" shall mean any United States federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, stamp, occupation, premium, windfall profits, customs duties, capital stock, franchise, profits, withholding on amounts paid to or by any Person, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated or other tax of any kind whatsoever, whether computed on a separate or consolidated, unitary or combined basis or in any other manner, including any interest, penalty or addition thereto, whether disputed or not.

"**Transaction Agreements**" shall mean this Agreement and any other agreements, instruments or documents entered into pursuant to this Agreement.

"**Transactions**" shall mean the transaction contemplated by this Agreement and the other Transaction Agreements.

## **ARTICLE II**

## **PURCHASE AND SALE OF ASSETS BY BUYER, ASSUMPTION OF LIABILITIES AND PURCHASE PRICE**

2.1    **Purchase and Sale of Assets**.  Upon the terms and subject to the conditions and provisions contained herein and, subject to the approval of the Bankruptcy Court of the Sale

4

Motion and entry of the Sale Order and, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, at the Closing, Seller shall sell, convey, transfer, assign and deliver to Buyer, and Buyer shall acquire and accept from Seller, free and clear, to the maximum extent permitted by the Bankruptcy Code, of any and all Encumbrances, all of Seller's right, title and interest in and to all of the assets, properties and contractual rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (but specifically excluding the Excluded Assets), which relate to, or are used or held for use in connection with Seller's boat service, maintenance, repair and storage business, its boat production business (collectively, the "**Business**") or otherwise held by Seller at Closing, including but not limited to the following (collectively, the "**Purchased Assets**"):

(a)    all inventory, vehicles, travel lifts, trailers, forklifts, resin injectors, machinery, molds and other tooling, equipment, furniture, furnishings, office equipment, technology, communications equipment, tools and other tangible property;

(b)    all contracts, agreements, leases and licenses to which Seller is a party and which constitute Assumed Contracts;

(c)    all licenses, registrations, approvals, clearances and permits (including environmental permits) of Seller, to the extent transferrable as a matter of right under applicable local, state and federal law;

(d)    all plans for the layout of decks, compartments and components, plans for machinery, electrical, plumbing, safety, lay out, and systems integration, CAD/CAM/CAD/3D modeling downloads, project planning downloads, and "as built" drawings, schematics and layouts, whether related to the BB44 or other designs, to the extent transferrable as a matter of right;

(e)    all rights under or pursuant to warranties, representations and guarantees made by vendors, sellers of assets or other counterparties to the extent relating to any Purchased Asset, to the extent transferable as a matter of right, other than any warranties, representations and guarantees pertaining to any Excluded Assets;

(f)    all rights under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees or agents of Seller or with third parties, in each case other than to the extent related to the Excluded Assets, to the extent transferable as a matter of right;

(g)    all U.S. and foreign trademarks, service marks, certification marks, collective marks and trade names, trade secrets, confidential information, know how, show how, trade dress, websites, e-mail addresses, Internet domain names, customer lists, technology, source code, goodwill and other items of intangible or intellectual property, including, to the extent assignable, the license to Seller from Zurn Yacht Design;

(h)    all books and records of Seller (other than corporate governance documents, Seller's original books and records, historical financial information and other records that Seller is required by law to retain or not transfer or disclose set forth in Section 2.2(c) below), whether in

4920-3580-3405, v.4/839319

hard copy or electronic format, to which Buyer shall afford Seller reasonable access after the Closing for, among other purposes, the purpose of enabling Buyer to make electronic copies of the foregoing;

(i)     all accounts receivable and other amounts owing on contracts for boat service, maintenance, repair and storage outstanding as of the Closing Date; and

(j)     other than any Excluded Assets, all other assets or rights of Seller of every kind and description, wherever located, whether real, personal or mixed, tangible or intangible, including so-called BB44 "hull #4".

2.2    **Excluded Assets**.  Notwithstanding anything to the contrary contained in this Agreement, the Purchased Assets shall not include (each an "**Excluded Asset**" and collectively the "**Excluded Assets**"):

(a)     Seller's cash on hand, including cash collateral and any escrow monies held by Seller;

(b)     all causes of action;

(c)     the corporate governance documents, Seller's original books and records, historical financial information and other records that Seller is required by law to retain or not transfer or disclose;

(d)     any rights of Seller under any contract or lease that is not an Assumed Contract, including the Excluded Production Contracts; and

(e)     all rights to Seller's website, domain names and company email addresses.

2.3    **Assumption of Liabilities**.  Upon the terms and subject to the conditions and provisions contained herein and in the Sale Order, Buyer shall assume and become responsible for all cure amounts associated with any Assumed Contracts, as ordered by the Bankruptcy Court, together with liabilities arising under the Assumed Contracts, solely with respect to the period after the Closing (collectively, the "**Assumed Liabilities**"), effective as of the Closing.  The Sale Order shall provide for the assumption and assignment of the Assumed Contracts under section 365 of the Bankruptcy Code.  Buyer and/or Seller may file amended, supplemental, or additional pleadings, if required, to address additions or deletions to Schedule 2.1(b). To permit the assumption and assignment of any of the Assumed Contracts to Buyer pursuant to this Agreement, Buyer hereby agrees to (i) pay in cash at Closing, in addition to the Purchase Price, any associated cure amounts required under the Bankruptcy Code and any order of the Bankruptcy Court, and (ii) to provide adequate assurance of future performance under the Bankruptcy Code with respect to such Assumed Contracts. At least five (5) days prior to the Sale Hearing, Buyer may by notice to Seller and without any additional consideration therefor, designate additional contracts, agreements, leases and/or licenses to be assumed and assigned or to designate executory contracts and agreements which will not be assumed and assigned notwithstanding their prior inclusion in

6

Schedule 2.1(b) or prior designation by the Buyer.

2.4 **Liabilities Not Assumed**. Except with respect to Assumed Liabilities, Buyer shall not assume any liability or obligation for any Encumbrance, and, except as otherwise provided herein and to the extent permitted by the Bankruptcy Code, the Purchased Assets shall be sold and conveyed to Buyer free and clear of all Encumbrances whatsoever.

2.5 **Deposit; Purchase Price**.

(a) <u>Deposit</u>. Contemporaneously with the execution of this Agreement, Buyer shall deposit into escrow a good faith deposit equal to $50,000.00 in immediately available funds (the "**Deposit**") with Murphy & King, P.C. counsel to Seller, as escrow agent (the "**Escrow Agent**"), with such amount to be held in escrow in a non-interest bearing escrow account and paid as provided in this Agreement.  In no event shall the Escrow Agent be precluded from continuing its legal representation of Seller as a result of its role as the Escrow Agent, even in the instance of a dispute between Seller and Buyer under this Agreement. If there is any dispute between the parties hereto as to whether or not the Escrow Agent is obligated to disburse or release the funds held under and pursuant to this Agreement, the Escrow Agent shall not be obligated to make such disbursement or delivery, but in such event shall hold the funds until receipt by the Escrow Agent of an authorization in writing signed by all parties having an interest in said dispute, directing the disposition of the funds, or in the absence of such authorization, the Escrow Agent shall hold the funds until a final determination of the rights of the parties by the Bankruptcy Court.  The Deposit shall be: (i) credited against the Purchase Price on the Closing Date if Buyer is the successful buyer of the Purchased Assets, (ii) retained by Seller as a non-exclusive remedy in the event the closing of the sale of the Purchased Assets does not occur through no fault of Seller, or (iii) returned to Buyer in the event the closing of the sale of the Purchased Assets does not occur through no fault Buyer, or if Buyer is not the successful buyer of the Purchased Assets.

(b) <u>Purchase Price</u>.  At Closing, Buyer agrees to pay the balance of the Purchase Price by wire transfer of immediately available funds.  The Purchase Price shall be an amount equal to $500,000.00 (which amount shall include the Deposit).  The Purchase Price shall be allocated as described on Schedule 2.5(b) to be provided at Closing.

**ARTICLE III**

**THE CLOSING**

3.1 **Closing**.  Unless otherwise mutually agreed by the Parties, the closing of the purchase and sale of the Purchased Assets, the payment of the Purchase Price, the assumption of the Assumed Liabilities, and the consummation of the other transactions contemplated by this Agreement (the "**Closing**") shall take place on the 3rd Business Day (the "**Closing Date**") following full satisfaction or due waiver (by the Party entitled to the benefit of such condition) of the closing conditions set forth in Article VIII and Article IX (other than conditions which, by their nature, are to be satisfied at the Closing), or at such other time, date or place as the Parties may agree upon in

7

writing; provided that Buyer shall not be required to consummate the Closing prior to when the Sale Order is entered and has become a Final Order.

3.2   **Closing Deliverables**.

(a)   At the Closing, and in connection with effecting and consummating the transactions contemplated hereby, Seller shall, to the extent necessary to deliver title, in Buyer's reasonable discretion, deliver the following to Buyer:

(i)   an executed Bill of Sale in the form attached hereto as Schedule 3.2(a)(i);

(ii)   a certified copy of the Sale Order;

(iii)   in accordance with the Sale Order, an executed counterpart of an Assumption and Assignment Agreement with respect to any Assumed Contracts in the form attached hereto as Schedule 3.2(a)(ii);

(iv)   in accordance with the Sale Order, assignment documentation necessary for the conveyance of any intellectual property to Buyer;

(v)   copies of all instruments, certificates, documents, and other filings (if applicable) reasonably necessary to release the Purchased Assets from all Encumbrances, including any applicable UCC termination statements and releases of liens, all in form and substance reasonably satisfactory to Buyer;

(vi)   an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of Seller certifying that the conditions set forth in Article IX have been satisfied;

(vii)   possession of the Purchased Assets; and

(viii)   such other instruments as shall be reasonably requested by Buyer to vest in Buyer title in and to the Purchased Assets in accordance with the provisions hereof and the Sale Order.

(b)   At the Closing, and in connection with effectuating and consummating the transactions contemplated hereby, Buyer shall deliver the following to Seller:

(i)   the Purchase Price, as adjusted in accordance with this Agreement, by wire transfer of immediately available funds at Closing to an account designated by Seller;

(ii)   in accordance with the Sale Order, an executed counterpart of any Assumption and Assignment Agreement;

(iii) an officer's certificate, dated as of the Closing Date, executed by a duly authorized officer of Buyer certifying that the conditions set forth in Article VIII have been satisfied; and

(iv) the cure amounts required under the Bankruptcy Code with respect to the Assumed Contracts.

To the extent that a form of any document to be delivered hereunder is not attached as an Exhibit hereto, such documents shall be in form and substance, and shall be executed and delivered in a manner, reasonably satisfactory to Buyer and Seller.

3.3 **Payment of the Purchase Price**.  At Closing, the Deposit shall be released to Seller by Escrow Agent and Buyer shall deliver to Seller in immediately available funds the remainder of the Purchase Price.

3.4 **Transaction Expenses**.  Except as expressly provided herein, each party shall bear its own costs and expenses, including attorney, accountant and other consultant fees, in connection with the execution and negotiation of this Agreement and the consummation of the transactions contemplated hereby.

3.5 **Other Closing Matters**.  Each of the parties shall use their reasonable efforts to take such other actions required hereby to be performed by it prior to or on the Closing Date, subject to the terms and limitations of the Sale Order and the Bankruptcy Code.

## ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF SELLER

As an inducement to Buyer to enter into this Agreement, Seller hereby makes, as of the date hereof, the following representations and warranties to Buyer, but none of which, nor claims for breach or violation thereof, shall survive the Closing of the transactions contemplated hereby for any reason whatsoever:

4.1 **Authorization of Seller**.  Subject to entry of the Sale Order, Seller has all necessary right, power, capacity and authority to execute and deliver this Agreement and all other related documents to which it is a party, to consummate the transactions contemplated hereby and to perform its obligations hereunder.  This Agreement has been duly executed and delivered by Seller and, subject to entry of the Sale Order, is a valid and legally binding obligation of Seller enforceable against Seller in accordance with its terms.

4.2 **Organization**.  Seller is an entity duly organized, and to the extent legally applicable, in good standing and validly existing under the laws of the jurisdiction of its formation and has the power and authority to operate its properties and to carry on its business as it is now being conducted.

4920-3580-3405, v.4/839319

4.3    **Title to Assets; Absence of Liens and Encumbrances, etc.**  Pursuant to the Sale Order, Seller will transfer all right, title and interest in and to the Purchased Assets to Buyer, free and clear of any and all Encumbrances to the maximum extent permitted by the Bankruptcy Code.

4.4    **Labor Matters**.  Seller is not a party to or otherwise bound by any collective bargaining agreement or other contract with a labor union or labor organization, nor is Seller the subject of any proceeding that asserts that Seller has committed an unfair labor practice that seeks to compel Seller to bargain with any labor union or labor organization nor is there pending or, to the Knowledge of Seller, threatened in writing, any labor strike, dispute, walk-out, work stoppage, slow-down or lock-out involving Seller.

4.5    **Consents and Approvals**. To the Knowledge of Seller, other than the Sale Order, no consent, approval or authorization of any court, regulatory authority, governmental body, or any other entity or Person not a party to this Agreement is required for the consummation of the transactions described in this Agreement by Seller, provided that some personal property, intellectual property, licenses, plans and designs associated with Seller's boat building business may be subject to the rights and/or may require approvals from third parties, including Zurn Yacht Design. Subject to entry of the Sale Order, Seller has obtained, or shall have obtained prior to the Closing, all consents, authorizations or approvals of any third parties required in connection with the execution, delivery or performance of this Agreement by Seller or the consummation of the transactions contemplated by this Agreement and Seller has made, or shall make prior to the Closing, all registrations or filings with all governmental authorities required for the execution or delivery of this Agreement and the consummation of the transactions contemplated hereby, provided that some personal property, intellectual property, licenses, plans and designs associated with Seller's boat building business may be subject to the rights and/or may require approvals from third parties, including Zurn Yacht Design, and Seller shall not be responsible for obtaining consents, authorizations or approvals of third parties with respect to such personal property, intellectual property and/or designs.

4.6    **Compliance with Permits**. Except as disclosed on Schedule 4.6 to this Agreement, Seller has all permits which are required for the operation of the business as presently conducted, except where the absence of which would not be reasonably likely to be material to the business of Seller. Except as disclosed on Schedule 4.6 to this Agreement, Seller is not in default or violation (and no event has occurred which, with notice or the lapse of time or both, would constitute a default or violation) of any term, condition or provision of any permit to which the Seller is a party, except where such default or violation has been waived or excepted by the applicable governmental authority or would not be reasonably likely to have a material adverse effect on Seller. Notwithstanding the foregoing, this section shall not apply with respect to Environmental Laws, which shall be covered exclusively by Section 4.7.

4.7    **Environmental Matters**. The representations and warranties contained in this Section 4.7 are the sole and exclusive representations and warranties of Seller with respect to environmental matters, including matters relating to Environmental Laws. Except as would not be reasonably likely to result in a material adverse effect, to the Knowledge of Seller, Seller is not the subject of any outstanding litigation with any governmental authority with respect to Environmental Laws.

4920-3580-3405, v.4/839319

4.8 __Real Property__.  Seller does not own any real property.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

As an inducement to Seller to enter into this Agreement, Buyer hereby makes the following representations and warranties as of the date hereof to Seller:

5.1 __Organization and Good Standing__.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the Commonwealth of Massachusetts.  Buyer has all requisite corporate power and authority to own, lease and operate its properties and assets and to carry on its business.  Buyer is in good standing in each jurisdiction in which the failure to be so qualified and in good standing would have a material adverse effect on the ability of Buyer to consummate the Transactions.

5.2 __Authorization__.  Buyer has all necessary power and authority to enter into this Agreement and has taken all action necessary to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to perform its obligations hereunder, and no other corporate proceedings on the part of Buyer are necessary to authorize the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby.  This Agreement has been duly executed and delivered by Buyer and is a valid and binding obligation of Buyer, enforceable against it in accordance with its terms, except as enforceability may be limited or affected by applicable bankruptcy, insolvency, reorganization or other laws of general application relating to or affecting the rights of creditors and except as enforceability may be limited by rules of law governing specific performance, injunctive relief or other equitable remedies.

5.3 __Conflicts; Consents of Third Parties__.

(a) None of the execution, delivery and performance by Buyer of this Agreement and of the other transaction documents to which Buyer is a party, nor the consummation of the transactions contemplated hereby or thereby, nor the compliance by Buyer with any of the provisions hereof or thereof will (i) conflict with, or result in the breach of, any provision of the governing documents of Buyer; (ii) conflict with, violate, result in the breach of, or constitute a default under any contract to which Buyer is a party or by which Buyer or its respective properties or assets are bound; (iii) violate any order by which Buyer is bound or (iv) conflict with or result in the violation of any applicable law.

(b) Other than the Sale Order, no consent, order, or permit of, or declaration or filing with, or notification to, any governmental authority is required on the part of Buyer in connection with the execution, delivery and performance of this Agreement or any other transaction document, the compliance by Buyer with any of the provisions hereof or thereof, or the consummation by Buyer of the transactions contemplated hereby.

4920-3580-3405, v.4/839319

5.4     **Financing**.  On the Closing Date, Buyer will have sufficient cash on hand to deliver the balance of the Purchase Price then due. The closing of any financing shall not be a condition to Closing of the transactions contemplated by this Agreement.

5.5     **Brokers**. No Person is entitled to any brokerage, financial advisory, finder's or similar fee or commission payable by Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Buyer.

## ARTICLE VI

## COVENANTS

Seller and Buyer covenant and agree as follows:

6.1     **Access**.  Between the date hereof and the Closing Date, Seller shall permit Buyer and its representatives to have reasonable access to Seller's premises, business records and operations related to the Purchased Assets during regular business hours and upon reasonable notice.

6.2     **Employees**.   Buyer may, in its discretion, offer employment to employees of Seller, but Buyer shall not be responsible for any compensation or benefits, including without limitation payroll, employee benefits (e.g., pension, severance and insurance benefits) or severance, in respect of any employee of Seller relating to any period prior to the Closing.  Seller shall be responsible for payment of all amounts due and owing to employees for periods prior to the Closing.

6.3     **Further Assurances**.  In addition to the provisions of this Agreement, from time to time after the Closing, subject to the provisions of the Sale Order, Seller and Buyer will use all commercially reasonable efforts to execute and deliver such other instruments of conveyance, transfer or assumption, as the case may be, and take such other actions as may be reasonably requested to implement more effectively, the conveyance and transfer of the Purchased Assets.

6.4     **Condition of the Purchased Assets**.   Buyer agrees and acknowledges that (a) Buyer's decision to proceed with the transactions contemplated by this Agreement is based upon Buyer's own inspection and investigation of the Purchased Assets and the business of Seller; (b) Buyer has been afforded the full opportunity, to the extent it desired to do so, to fully inspect and review (i) the books and records of Seller, (ii) the title to the Purchased Assets, (iii) such other operational and financial information as Buyer has found appropriate including, without limitation, any survey, appraisal, environmental, title, engineering, sales, production or employment matters, and (c) Buyer is satisfied with each of the foregoing matters, and will, at Closing, acquire the Purchased Assets, without representation or warranty, express or implied, except as set forth in the Sale Order.  Upon Closing, Buyer shall assume the risk that adverse matters, including, but not limited to, adverse title, physical and environmental conditions, may not have been revealed by Buyer's inspections and investigations. Buyer acknowledges and agrees that upon Closing, Seller shall sell and convey to Buyer and Buyer shall accept the Purchased Assets "As Is, Where Is", with all faults. Buyer further acknowledges and agrees that there are no oral agreements, warranties

or representations, collateral to or affecting the Purchased Assets by Seller, any agent of Seller or any third party. Seller is not liable or bound in any manner by any oral or written statements, representations, or information pertaining to the Purchased Assets furnished by any broker, agent, employee, servant or other Person. Buyer acknowledges that the Purchase Price reflects the "AS IS" nature of this sale and any faults, liabilities, defects or other adverse matters that may be associated with the Purchased Assets. Buyer has fully reviewed the disclaimers and waivers set forth in this Agreement with its counsel and understands the significance and effect thereof. Effective upon Closing, Buyer, for itself and Buyer's representatives, hereby releases and discharges Seller, from any and all claims, suits, actions, proceedings, obligations, damages, losses, liabilities, fines, penalties, costs and expenses resulting from, related to or incident to the conditions of, at, under or about the Purchased Assets, whether or not known to Buyer or its representatives or indicated by any investigation, or arising before or after Closing, anticipated or unanticipated, foreseen or unforeseen. The terms and conditions of this Section shall expressly survive the Closing and not merge with the provisions of any closing documents.

6.5    **Access to Information; Maintenance of Records**.

(a)    Following the Closing, for a period of the later of (i) three (3) years after the Closing Date and (ii) the date of entry of an order of the Bankruptcy Court closing the Bankruptcy Case, or if converted to a case under chapter 7 of the Bankruptcy Code, an order of the Bankruptcy Court closing such case, Seller and its representatives shall have reasonable access to all of the books and records compiled with respect to the period prior to the Closing Date relating to the business of Seller or the Purchased Assets, including all information pertaining to the Assumed Contracts, all employee records or other personnel and medical records required by law, legal process or subpoena, in the possession of the other party to the extent that such access may reasonably be required by such party in connection with the Assumed Contracts, or other matters relating to or affected by the operation of the business of Seller and the Purchased Assets.

(b)    Such access shall be afforded by the party in possession of such books and records upon receipt of reasonable advance notice and during normal business hours; provided, however, that: (i) any such access shall be conducted in such a manner as not to interfere unreasonably with the operation of the business of any party; (ii) no party shall be required to take any action which would constitute a waiver of the attorney-client privilege; (iii) no party shall be required to take any action which would reveal confidential or proprietary information; and (iv) no party shall be required to supply the other party with any information which such party is under a legal obligation not to supply. Seller shall be solely responsible for any costs or expenses incurred by it in exercising its right of access hereunder.

(c)    If the party in possession of such books and records shall desire to dispose of any such books and records prior to the expiration of such period, such party shall, prior to such disposition, give the other party a reasonable opportunity at such other party's expense, to segregate and remove such books and records as such other party may select.

## **ARTICLE VII**

## **PRE-CLOSING COVENANTS**

7.1     **Conduct of Business of Seller**.  Except as required, authorized or restricted pursuant to this Agreement, the Bankruptcy Code or an order of the Bankruptcy Court, Seller shall (a) conduct the Business in the Ordinary Course of Business, (b) keep in full force and effect without modification all current and existing insurance policies, (c) retain all current and existing employees, and (d) preserve and maintain all permits required for the conduct of the Business as currently conducted.

7.2     **Filing of Motions**.  On the Petition Date, Seller shall have filed (a) the DIP Motion, and (b) the Sale Motion with the Bankruptcy Court, each in a form and substance reasonably acceptable to Buyer.  Seller shall use its reasonable best efforts to obtain the entry of the Sale Order in form and substance reasonably satisfactory to Buyer by the Bankruptcy Court on or before **February 26, 2025**. Seller shall use commercially reasonable efforts to timely file all pleadings with the Bankruptcy Court as are necessary or appropriate to secure entry of the Sale Order and cause notice of the Sale Hearing to be served on the parties entitled to notice thereof pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and any applicable local rules, and shall diligently pursue the entry of the Sale Order and approval of this Agreement and the related agreements by the Bankruptcy Court.  Seller and Buyer acknowledge that this Agreement and the transactions contemplated by this Agreement are subject to the entry of the Sale Order. Buyer acknowledges that the process of obtaining the entry of the Sale Order will require: (x) Seller to market the Purchased Assets, (y) solicit counter-offers for the Purchased Assets pursuant to bid procedures approved by the Bankruptcy Court, and (z) if an counter-offer that complies with the bid procedures is submitted, an auction for the Purchased Assets (at which auction Buyer may participate in its discretion).

7.3     **Specific Requirements of Sale Order**.  Notwithstanding any provision of this Agreement, the Sale Order shall be in form and substance reasonably satisfactory to Buyer, and shall without limitation, (a) determine that Seller has all right, title and interest in and to the Purchased Assets without any competing claims as to ownership, with all right title and interest to transfer and convey the Purchased Assets to Buyer, and no other Person or entity has any ownership right, title or interest therein, (b) contain a specific finding that the Seller has demonstrated compelling circumstances and good, sufficient and sound business purposes and justifications for the court to approve the sale of the Purchased Assets to Buyer on substantially the terms and conditions set forth in this Agreement and authorize Seller to proceed with the transaction, (c) contain a specific finding that this Agreement represents the highest and best offer for the Purchased Assets and that the Purchase Price represents reasonably equivalent value, fair consideration and fair value for the Purchased Assets under the Bankruptcy Code and reasonably equivalent value and fair consideration under the UFTA and the UFCA, respectively (d) approve the Seller's entry into the this Agreement and the performance of all obligations of the Seller hereunder, (e) contain specific findings that Buyer is a good faith purchaser of the Purchased Assets under the United States Bankruptcy Code and that there have been no agreements between Buyer and any other entity regarding the Purchased Assets which constitute collusion or fraud, (f) provide that the sale of the Purchased Assets to Buyer shall be free and clear of all Encumbrances, including, without limitation rights or claims based on any successor, transferee or vicarious

14

liability, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, based in whole or in part, on any theory of law, including without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity or arising under any employment contract, understanding or agreement, including without limitation, collective bargaining agreement, employee pension plan, and employee welfare or benefit plans, and (g) provide that to the fullest extent permitted by law, all government permits and licenses currently issued to Seller shall be transferred to Buyer.

## ARTICLE VIII

### CONDITIONS TO SELLER'S OBLIGATIONS

The obligation of Seller to consummate the transactions contemplated hereby is subject, in the reasonable discretion of Seller, to the satisfaction, on or prior to the Closing Date, of each of the following conditions any of which may be waived (in whole or in part) by Seller:

8.1    **Entry of Sale Order**.  The Sale Order shall have been entered by the Bankruptcy Court and no court of competent jurisdiction shall have entered an order staying such Sale Order pending appeal.

8.2    **Instruments of Conveyance**.  Buyer shall have executed and delivered to Seller at the Closing all of the documents provided for in Section 3.2(b) hereof.

8.3    **Absence of Litigation**.  No court action or proceeding shall have been commenced to restrain or prohibit the transactions contemplated by this Agreement.

8.4    **Payment of the Purchase Price**.  Buyer shall have paid the Purchase Price in immediately available funds.

8.5    **Representations and Warranties**. The representations and warranties of Buyer contained in Article V of this Agreement shall be true and correct at Closing, in all material respects, unless such representation or warranty expressly relates to an earlier date.

## ARTICLE IX

### CONDITIONS TO BUYER'S OBLIGATIONS

The obligations of Buyer to purchase the Purchased Assets and to consummate the transactions contemplated hereby are subject, in the reasonable discretion of Buyer, to the satisfaction, on or prior to the Closing Date, of each of the following conditions, any of which may be waived (in whole or in part) by Buyer:

9.1    **Entry of Sale Order**.  The Sale Order shall have been entered by the Bankruptcy Court and no court of competent jurisdiction shall have entered an order staying such Sale Order pending appeal.

4920-3580-3405, v.4/839319

9.2     **Instruments of Conveyance**.  Seller shall have executed and delivered to Buyer at the Closing all of the documents provided for in Section 3.2(a) hereof.

9.3     **Absence of Litigation**.  No court action or proceeding shall have been commenced to restrain or prohibit the transactions contemplated by this Agreement.

9.4     **Representations and Warranties**. The representations and warranties of Seller contained in Article IV of this Agreement shall be true and correct at Closing, in all material respects, unless such representation or warranty expressly relates to an earlier date.  Seller agrees to deliver a closing certificate, in form and substance satisfactory to Buyer, evidencing the foregoing on the Closing Date, provided however, in no event shall such representations and warranties of Seller, or claims for breach or violation thereof, survive the Closing of the transactions contemplated by this Agreement for any reason.

## ARTICLE X

## MISCELLANEOUS

10.1     **Termination**.

(a)     **Rights to Terminate**.  In addition to any other rights of termination of Buyer expressly provided in this Agreement, this Agreement may be terminated prior to the Closing:

(i)      by the mutual written consent of Buyer and Seller (subject to the approval of the Bankruptcy Court) at any time, in which case the Deposit shall be returned to Buyer;

(ii)      by Buyer if (A) the Sale Order shall not have been entered by **February 26, 2025**; (B) one or more of the conditions set forth in Article IX is not satisfied on or before the date specified for the satisfaction of such condition, through no fault of Buyer, (C) the Closing has not occurred on or before February 28, 2025 (the "**Closing Deadline**"), through no fault of Buyer, or (D) Seller shall have materially breached its obligations under this Agreement, and in each such case Buyer shall notify Seller of the exercise of its termination right hereunder, the Deposit shall be returned to Buyer and this Agreement shall immediately terminate;

(iii)      by Seller if (A) one or more of the conditions set forth in Section 8.1 or 8.3 is not satisfied on or before the Closing Date or (B) the Closing has not occurred on or before the Closing Deadline, through no fault of Seller, and in each case Seller shall notify Buyer of the exercise of its termination right hereunder, the Deposit shall be returned to Buyer and this Agreement shall immediately terminate;

(iv)      by Seller if one or more of the conditions set forth in Section 8.2, Section 8.4 or Section 8.5 is not satisfied on or before the Closing Date through no fault of Seller, or a material breach of this Agreement by Buyer occurs, and in each case the Deposit shall be paid to and retained by Seller for breach of this Agreement.

(b)     **Remedies Upon Termination**. In the event of termination of this Agreement pursuant to Section 10.1(a):

(i)    each party shall return all documents, work papers and other material of any other party, or those prepared by a party from the review of such documents, work papers and other material of the other party, relating to the transactions contemplated hereby, whether obtained before or after the execution hereof, to the party furnishing the same;

(ii)    no confidential information received by any party with respect to the business of any other party or its affiliates shall be used or disclosed to any third party, unless required by law; and

(iii)    the rights and obligations of the parties hereto under this Agreement shall terminate (other than the provisions of this Section and the provisions related to the treatment of the Deposit under Section 10.1(a)) and there shall be no liability of any party hereto to any other party hereunder and each party hereto shall bear its own expenses incurred in connection with the negotiation, preparation, execution and performance of this Agreement; provided that the foregoing shall not relieve any party of liability for damages actually incurred by any other party as a result of any breach of this Agreement resulting from act or omission of the party permitting, causing or committing such breach or relating to any provision of this Agreement that is expressly intended to survive termination.

(c)    **Standby Obligation**. Notwithstanding the entry of an order naming a party other than the Buyer as the winning bidder at the Auction, the Buyer shall, to the extent that the Buyer is the second highest bidder at the Auction, remain committed to consummate the transactions contemplated hereby for a period of twenty (20) days following entry of such order by the Bankruptcy Court.  If Seller, at its sole election, delivers notice to the Buyer, within fifteen (15) days after entry of an order naming a party other than the Buyer as the winning bidder at the Auction, that the third party transaction will not be consummated and that Seller intends to consummate the transactions contemplated hereby, the Buyer shall take all actions required in this Agreement to complete the purchase of the Acquired Assets on a Business Day within five (5) days following such notification, as if the Buyer had been the winning bidder at the Auction and the Sale Order had been originally entered.

10.2    **Assignment; Successors**.  Except for an assignment by Buyer to an affiliate of Buyer prior to Closing, neither this Agreement nor any of the rights or obligations hereunder may be assigned by any party without the prior written consent of the other parties to this Agreement. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective representatives, heirs, legatees, successors and permitted assigns, including without limitation any chapter 11 or chapter 7 trustee appointed in the Bankruptcy Case, and no other Person shall have any right, benefit or obligation hereunder.

10.3    **Notices**.  All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when received if personally delivered; when transmitted if transmitted by telecopy, upon receipt of telephonic confirmation; the day after it is sent, if sent for next day delivery to a domestic address by recognized overnight delivery service (including Federal Express); and upon receipt, if sent by certified or registered mail, return receipt requested. In each

case notice shall be sent to:

| | |
|---|---|
| If to Seller, addressed to: | Boston Boatworks, L.L.C. |
| | 333 Terminal Street |
| | Charlestown, MA 02129 |
| | Attention: Scott R. S. Smith |
| | |
| | with a copy to: |
| | D. Ethan Jeffery, Esq. |
| | Murphy & King, P.C. |
| | 28 State Street, Suite 3101 |
| | Boston, MA 02109 |
| | Email: ejeffery@murphyking.com |
| | |
| If to Buyer, addressed to: | Boston Marine Services LLC |
| | 1 Pier 8, 13th Street |
| | Charlestown, MA 02129 |
| | Attention: Charles A. Lagasse, Jr. |
| | |
| with a copy to: | Amy A. Zuccarello |
| | Sullivan & Worcester LLP |
| | One Post Office Square |
| | Boston, MA 02110 |
| | Email: azuccarello@sullivanlaw.com |

or to such other place and with such other copies as either party may designate as to itself by written notice to the others.

10.4     **Choice of Law; Jurisdiction**.  This Agreement shall be construed and interpreted, and the rights of the parties determined in accordance with, the laws of the Commonwealth of Massachusetts (without regard to its conflicts of laws principles) and the Bankruptcy Code.  Each party irrevocably consents to the service of any and all process in any action or proceeding arising out of or relating to this Agreement by the transmitting of copies of such process to each party at its address specified in Section 10.3 in a manner provided for in Section 10.3.  The parties hereto irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court) over any dispute arising out of or relating to this Agreement and any other agreement or instrument contemplated hereby or entered into in connection herewith, or any of the transactions contemplated hereby or thereby and any such dispute shall be deemed to have arisen in the Commonwealth of Massachusetts.  Each party hereby irrevocably agrees that all claims in respect of such dispute or proceeding may be heard and determined in such courts. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith.

10.5     **Entire Agreement; Amendments and Waivers**.  This Agreement, together

with all exhibits and schedules hereto, constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No amendment, supplement, modification or waiver of this Agreement shall be binding unless executed in writing by on or behalf of the party to be bound thereby.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

10.6    **Construction**.  The headings and captions of the various Articles and Sections of this Agreement have been inserted solely for purposes of convenience, are not part of this Agreement, and shall not be deemed in any manner to modify, explain, expand or restrict any of the provisions of this Agreement.  All Exhibits and schedules attached are made a part hereof.  All terms defined herein shall have the same meaning in the exhibits, except as otherwise provided therein. The terms "hereby", "hereof", "hereto", "hereunder" and any similar terms as used in this Agreement, refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used.  Whenever in this Agreement provision is made for the payment of attorneys' fees, such provision shall be deemed to mean reasonable attorneys' fees and paralegals' fees.   The term "including" when used herein shall mean "including, without limitation."  Wherever in this Agreement the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.

10.7    **Third Party Beneficiaries**.  No Person other than the parties hereto, shall have any rights or claims under this Agreement.

10.8    **No Waiver**.  The failure of either party hereto to seek redress for any breach, or to insist upon the strict performance, of any covenant or condition of the Agreement by the other shall not be, or be deemed to be, a waiver of the breach or failure to perform nor prevent a subsequent act or omission in violation of, or not strictly complying with, the terms hereof from constituting a default hereunder.

10.9    **Multiple Counterparts**.  This Agreement may be executed in one or more counterparts, each of which may be delivered electronically and shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.10    **Invalidity**.  In the event that any one or more of the provisions, or any portion thereof, contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, then such provision shall remain valid and enforceable to the maximum extent permitted by law.  Such invalidity, illegality or unenforceability shall not affect any other provision, or any portion thereof, of this Agreement or any other such instrument.

10.11    **Publicity**.  Each party shall consult with the other prior to issuing any press release or otherwise making any public statements with respect to the transactions contemplated hereby, and no party shall issue any such press release or make any such public statements or comments relating to these transactions without the prior written consent of the other (which shall not be unreasonably withheld), except as may be required by applicable law.

19

10.12    **Cumulative Remedies**.  All rights and remedies of either party hereto are cumulative of each other and of every other right or remedy such party may otherwise have at law or in equity, and the exercise of one or more rights or remedies shall not prejudice or impair the concurrent or subsequent exercise of other rights or remedies, including the right to specific performance of the terms hereof.

10.13    **Representation by Counsel; Mutual Negotiation**. Each party has been represented by counsel of its choice in negotiating this Agreement.  This Agreement shall therefore be deemed to have been negotiated and prepared at the joint request, direction and construction of the parties, at arm's-length with the advice and participation of counsel, and will be interpreted in accordance with its terms without favor to any party.

10.14    **Time**.  Time is of the essence of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed under seal all as of the day and year first above written.

SELLER:

Boston Boatworks, L.L.C.,

by: _____
Name: Scott R. S. Smith, Authorized Signatory

BUYER:

Boston Marine Services LLC,

by: _____
Name: Charles A. Lagasse, Jr., Manager

4920-3580-3405, v.4/839319

**SELLER**:

Boston Boatworks, L.L.C.,

by: _____
Name: Scott R. S. Smith, Authorized Signatory

**BUYER**:

Boston Marine Services LLC,

by: _____
Name: Charles A. Lagasse, Jr., Manager

SCHEDULE 2.1(b)

ASSUMED CONTRACTS

4920-3580-3405, v.4/839319

| Schedule 2.1(b) |
| --- |
| **Counter-party to Contract** |
| Good Trouble 40z 55/ Ron O'Hanley |
| GEZELLIG 50z 16/ Gary Blanken |
| LoLa 50z- Verdine 50z21/ Greg Verdine |
| Neeli 50z27/Capt. Tory Pound |
| Merry Jane DC 48 #12/ Denise Aronson |
| CYDONIA 40z12/ Alexander Falk |
| DADDY'S DREAM 40z137/ John Szum |
| JANE ELLEN 40z109/ Jim White |
| MISS AMERICA 40z16/ Michael Egan |
| BY THE WAY 36z32z/Steve Callahan |
| ON THE BUTTON 40z76/Roy Giarrusso |
| F It Ship It Cruisers 33/Tameem Hourani |
| Live a Little Pardo 43 / Tameem Hourani |
| ABEGWEIT 53z38/ Donald Nicholson |
| WADADLI 40z89/ Jeffrey Hurst |
| CARAVAN 35z10/ Andrew Hayden |
| SPYGLASS/North shore 25/Thomas Riley |
| Solace, 40z / Jay Heim |
| Cepheus / custom BB 18 sail boat/Marty Morgan |
| SATISFACTORY 40Z44/ Lisa |
| SUMMERPLACE Beneteau 38.1/ David King |
| Kcea/ Saxdor 320/ Ben Langston |
| Kate IV, Back Cove 340 / Karen Sommers |
| Whaler 13, Karen Sommers |
| IRISH WHISPER 43z129/ William McLaughlin |
| GUARDIAN albin 28/Ernest Hardy |
| N/N GRADY/ John Winterle |
| JUST CHILLENS/Ben Schilens |
| Southern Cross, 50z/ Kevin Cunningham |
| Spaghetti and meatballs, 40z /mngr Rose Avigliano |
| Mer Douce, 40z / Jeff Orr |
| Mako 23 Bill Springer |

SCHEDULE 2.5(b)

Allocation of Purchase Price

To be provided at Closing.

4920-3580-3405, v.4/839319

SCHEDULE 3.2(a)(i)

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS that Boston Boatworks, L.L.C., a Massachusetts limited liability company (the "**Seller**"), for good and valuable consideration paid to it at or prior to the delivery of this instrument, the receipt and sufficiency of which are hereby acknowledged, does hereby sell, grant, bargain, convey, confirm, assign, transfer and deliver to Boston Marine Services LLC, a Massachusetts limited liability company (the "**Buyer**"), and its successors and assigns forever, all of Seller's right, title and interest in and to the Purchased Assets, as defined in that certain Asset Purchase Agreement, dated as of January __, 2025 (the "**Agreement**"), between Seller and Buyer, pursuant to the terms of the Agreement, the Sale Order (as defined therein) and the Bankruptcy Code.  Capitalized Terms used but not otherwise defined herein shall have same meanings as set forth in the Agreement.

The Bankruptcy Court has approved the sale, assignment, transfer and conveyance of the Purchased Assets to Buyer pursuant to the Sale Order, dated _____, 2025.

IN WITNESS WHEREOF, Seller has caused this Bill of Sale to be executed as of the ___ day of _____, 2025.


[Signatures follow on next page]

23

Boston Boatworks, L.L.C.,


by: _____
Name: Scott R. S. Smith, Authorized Signatory

4920-3580-3405, v.4/839319

SCHEDULE 3.2(a)(ii)

ASSUMPTION AND ASSIGNMENT AGREEMENT

ASSUMPTION AND ASSIGNMENT AGREEMENT, dated as of _____, 2025, Boston Boatworks, L.L.C., a Massachusetts limited liability company (the "**Seller**") and Boston Marine Services LLC, a Massachusetts limited liability company (the "**Buyer**").

WHEREAS, Seller and Buyer have entered into that Asset Purchase Agreement, dated as of January __, 2025 (the "**Purchase Agreement**"), pursuant to which Seller has agreed to sell, and Buyer has agreed to purchase, the Purchased Assets (capitalized terms used but not otherwise defined herein shall have the same meaning as set forth in the Purchase Agreement); and

WHEREAS, the Purchase Agreement provides, among other matters, for Seller to assume and assign to Buyer all of Seller's rights and obligations, under the Assumed Contracts for all periods after the Closing Date, as such rights and obligations are described in the Purchase Agreement and the Sale Order dated as of _____, 2025 (the "**Sale Order**"); and

WHEREAS, the Purchase Agreement and the Sale Order provide, among other matters, for Buyer to assume, satisfy, perform and/or pay the Assumed Contracts as provided in the Purchase Agreement and the Sale Order and to pay certain cure amounts related thereto.

NOW, THEREFORE, in consideration of the recitals, the agreements and obligations contained herein and certain other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree, effective as of the date hereof, as follows:

1.      <u>Assignment by Seller</u>. Seller hereby assumes and assigns to Buyer all of Seller's rights and obligations in, to and under the Assumed Contracts listed on <u>Exhibit A</u> annexed hereto and made a part hereof for all periods after the Closing Date, in each case, pursuant to the terms of the Purchase Agreement and the Sale Order or as otherwise ordered by the Bankruptcy Court.

2.      <u>Assumption by Buyer</u>.  Buyer hereby assumes and agrees to pay, perform and discharge all obligations under the Assigned Contracts for all periods after the Closing Date, pursuant to the terms of the Purchase Agreement and the Sale Order, including, without limitation, payment in cash at Closing of any and all cure amounts due in respect of any Assumed Contracts for all periods on or prior to the Closing Date, as provided in the Purchase Agreement and the Sale Order or as otherwise ordered by the Bankruptcy Court.

3.      <u>Agreement</u>.  This Agreement shall not be deemed to supersede any of the provisions of the Purchase Agreement and shall be subject to the terms of the Sale Order. To the extent that any term or condition of this Agreement is construed to conflict with any term or condition of the Purchase Agreement, the terms and conditions of the Purchase Agreement shall control and supersede those of this Agreement.

4.      <u>Successors and Assigns</u>.  All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and

assigns.

5.     <u>Further Actions</u>.  The parties agree, on behalf of themselves and their respective successors and assigns, to execute and deliver, or cause to be executed and delivered, and to do or make or cause to be done or made all further instruments, supplemental, confirmatory or otherwise, as may be required by the other in order to effectuate the foregoing.

6.     <u>Governing Law</u>.  This Agreement shall be construed and enforced in accordance with the laws (other than conflicts of law rules) of the Commonwealth of Massachusetts and the Bankruptcy Code.  The Bankruptcy Court shall have exclusive jurisdiction over all matters related to this Agreement.

7.     <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which may be delivered electronically, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8.     <u>Time</u>.  Time is of the essence with respect to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Assumption and Assignment Agreement as of the date first above written.

[Signatures follow on next page]

26

**SELLER**:

Boston Boatworks, L.L.C.,


by: _____
Name: Scott R. S. Smith, Authorized Signatory


**BUYER**:

Boston Marine Services LLC,


by: _____
Name: Charles A. Lagasse, Jr., Manager